STATE of Minnesota, Respondent,

v.

**Christopher SMITH, Appellant.**

**No. A12–0052.**

Court of Appeals of Minnesota.

Dec. 24, 2012.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN, Janelle Kendall, Stearns County Attorney, St. Cloud, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; SCHELLHAS, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

During an argument, appellant waved a knife at his cousin and demanded money. On appeal from his conviction of making terroristic threats, appellant argues that (1) his conduct did not constitute a terroristic threat under the terroristic-threats statute and, even if the statute prohibits his conduct, the evidence is insufficient to sustain his conviction; (2) he was denied a fair trial by the district court's admission of evidence that he possessed a box cutter when he was arrested two days after the incident; (3) the district court committed plain error by admitting a witness's prior out-of-court statements; and (4) the prosecutor impermissibly vouched for the testimony of a witness.

Because we conclude that (1) appellant's conduct was prohibited by the terroristic-threats statute and the evidence was sufficient to sustain his conviction; (2) appellant was not denied a fair trial by the district court's admission of the box-cutter evidence; (3) the district court did not err by admitting a witness's prior out-of-court statements; and (4) the prosecutor did not vouch for the testimony of his witness, we affirm.

## FACTS

In February 2010, appellant Christopher Smith and MacArthur Hicks, Jr., gave their cousins, D.W. and his sister, U.H., a ride to D.W. and U.H.'s apartment. Once they arrived, appellant and Hicks followed D.W. and U.H. inside the apartment building. Appellant and D.W. began arguing about money in the hallway outside of the apartment, and appellant and Hicks followed D.W. and U.H. as they went inside the apartment. Hicks immediately went to D.W.'s mother's bedroom, took a DVD player, and then left the apartment. Meanwhile, appellant and D.W. continued to argue in the apartment's hallway; appellant kicked D.W. in the leg. The argument then moved into the kitchen, where appellant took out a pocket knife, waved it in front of D.W.—who was standing approximately four feet away—and demanded money. D.W. kicked the knife out of appellant's hand. Appellant also waved a kitchen knife at D.W.

While D.W. and appellant continued to struggle, D.W. called 911. Appellant knocked the cell phone away from D.W. while D.W. was talking to the 911 operator, but D.W. retrieved the phone and resumed the conversation. Appellant left the apartment while D.W. was still on the phone with the operator.

The State of Minnesota charged appellant with one count of terroristic threats, a violation of Minn.Stat. § 609.713, subd. 1 (the terroristic-threats statute), one count of interference with a 911 call, a violation of Minn.Stat. § 609.78, subd. 2 (2008), and one count of fifth-degree assault, a violation of Minn.Stat. § 609.224, subd. 1(2) (2008).

After a trial, the jury found appellant guilty of all three counts. This appeal follows.

## ISSUES

1. Is the evidence sufficient to sustain appellant's conviction for terroristic threats?

2. Did the district court abuse its discretion by admitting evidence that appellant had a box cutter in his possession upon arrest?

3. Did the district court commit plain error by admitting a witness's prior out-of-court statements?

4. Did the prosecutor improperly vouch for a witness during the closing statement?

## ANALYSIS

### I. The evidence is sufficient to sustain appellant's conviction for terroristic threats.

 A person commits the offense of terroristic threats if he "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror or inconvenience." Minn.Stat. § 609.713, subd. 1. "A threat is a declaration of an intention to injure another or his property by some unlawful act." *State v. Schweppe*, 306 Minn. 395, 399, 237 N.W.2d 609, 613 (1975). A threat may be communicated by actions or words. *State v. Murphy*, 545 N.W.2d 909, 916 (Minn.1996). A communication constitutes a threat if, in context, it "would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Schweppe*, 306 Minn. at 399, 237 N.W.2d at 613 (quotation omitted).

Appellant first argues that his conduct did not constitute a terroristic threat under the terroristic-threats statute because he did not intend to commit a future act of violence. *See Murphy*, 545 N.W.2d at 916 ("The terroristic threats statute mandates that the threats must be to commit a *future* crime of violence which would terror-

ize a victim."). Instead, appellant contends that his conduct of waving a knife at D.W. conveyed a threat of immediate violence because it occurred during an ongoing confrontation. He argues that an appreciable break in time is required before conduct becomes a threat of future violence. Whether a defendant's conduct is prohibited by the statute he is charged under is an issue of statutory interpretation that this court reviews de novo. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002).

We disagree with appellant. While the Minnesota Supreme Court stated in *Murphy* that the terroristic-threats statute prohibits threats of *future* violence, it has never defined a specific amount of time that must pass before a threat of immediate violence becomes a threat of future violence. *See* 545 N.W.2d at 916. The appellant in *Murphy* engaged in conduct against people in the criminal justice system that, among other things, included placing dead animals and animal parts at his victims' houses, planting fake bombs, dumping oil and blood, spray painting obscenities on houses, puncturing tires, and cutting telephone wires. *Id.* There was no direct confrontation in *Murphy*. Moreover, *Murphy* states that "[i]t is the future act threatened, as well as the underlying act constituting the threat, that the statute is designed to deter and punish." *Id.*

Here, appellant's conduct constituted a threat to assault D.W. with the knife in the future if he did not comply with his demand for money. Appellant's threat to assault D.W. in the near future is not changed by the fact that appellant made the threat during an ongoing confrontation. The terroristic-threats statute is intended to deter and punish both appellant's act of waving the knife at D.W. while demanding money as well as appellant's future assault of D.W. Accordingly, we

conclude that there was sufficient evidence upon which to conclude that appellant's conduct constituted a terroristic threat under the terroristic-threats statute.

Appellant next argues that, even if his conduct is prohibited by the terroristic-threats statute, the state did not prove beyond a reasonable doubt that he had the intent to commit a terroristic threat. In reviewing a claim of insufficient evidence, this court considers the record "in a light most favorable to the verdict to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *State v. Hanson*, 800 N.W.2d 618, 621 (Minn.2011) (quotation omitted). A reviewing court must assume that the "jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989).

To convict appellant of terroristic threats, the state was required to prove that appellant threatened D.W. with the purpose of terrorizing him. *See* Minn. Stat. § 609.713, subd. 1. In the context of the terroristic-threats statute, purpose "means aim, objective, or intention," and "[t]errorize means to cause extreme fear by use of violence or threats." *Schweppe*, 306 Minn. at 400, 237 N.W.2d at 614. Intent is a state of mind that is generally proved using circumstantial evidence "by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn.1997). The victim's reaction to a threat is circumstantial evidence of intent. *Schweppe*, 306 Minn. at 401, 237 N.W.2d at 614.

This court applies heightened scrutiny to convictions that are based on circumstantial evidence. *State v. Al–Naseer*, 788 N.W.2d 469, 473 (Minn.2010).

"In circumstantial evidence cases, the circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Hawes*, 801 N.W.2d 659, 668 (Minn.2011) (quotation omitted). The first step in analyzing whether the evidence was sufficient in a circumstantial-evidence case is to identify the circumstances proved. *Id.* Second, this court must "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with rational hypotheses other than guilt." *Al–Naseer*, 788 N.W.2d at 473–74 (quotation omitted).

 Here, the state proved that appellant: entered D.W.'s apartment without permission; engaged in an argument with D.W. about money; kicked D.W. in the leg; refused to leave the apartment; waved a pocket knife and a kitchen knife at D.W. while demanding money; and appeared angry. In addition, appellant's actions caused D.W. to be afraid. We conclude that the circumstances proved are inconsistent with any rational hypothesis other than guilt.

 Appellant contends that his conduct was merely the result of transitory anger. The terroristic-threats statute is not intended "to authorize grave sanctions against the kind of verbal threat which expresses *transitory anger* which lacks the intent to terrorize." *State v. Jones*, 451 N.W.2d 55, 63 (Minn.App.1990) (quotation omitted), *review denied* (Minn. Feb. 21, 1990). While the incident in this matter did not continue for a long period of time, the evidence does not support the theory that he was expressing transitory anger without any purpose to terrorize. Accordingly, we conclude that sufficient evidence supports appellant's conviction of terroristic threats.

## II. The district court's decision to admit evidence that appellant had a box cutter in his possession upon arrest was harmless error.

 Appellant argues that he was denied his right to a fair trial when the district court admitted irrelevant and highly prejudicial evidence that he had a box cutter in his possession when he was arrested two days after the incident. This court reviews a district court's evidentiary ruling for an abuse of discretion and will not reverse the ruling absent clear error. *State v. Prtine*, 784 N.W.2d 303, 312 (Minn.2010). It is the appellant's burden to establish that the district court abused its discretion and that, as a result, appellant was prejudiced. *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003).

 All relevant evidence is generally admissible. Minn. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of any material fact more or less probable than it would be without the evidence. Minn. R. Evid. 401. Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403. "A weapon is admissible in a criminal case if it has some relevance to the issues in the case, but is not admissible if its only purpose is to create suspicion in the minds of the jurors that because a defendant owns a gun he is likely to commit crimes." *State v. Daniels*, 361 N.W.2d 819, 827 (Minn.1985). Physical evidence is admissible if it connects the defendant to the crime. *State v. Olson*, 436 N.W.2d 817, 820 (Minn.App.1989), *review denied* (Minn. Apr. 26, 1989). "The lack of an absolute connection between the object introduced into evidence and the alleged crime does not affect the admissibility of the challenged evidence, but only its weight." *Id.*

Here, the police officer who arrested appellant two days after the incident testified at trial that appellant had a box cutter in his pocket when he was arrested. The prosecutor showed D.W. the box cutter during his testimony and asked him if it was the pocket knife that appellant used during the incident. D.W. testified that it was not. In addition, a police investigator testified that he was not able to recover any fingerprints from the box cutter. The district court admitted the box cutter into evidence over appellant's objection.

Evidence that appellant had a box cutter in his pocket upon his arrest was not relevant evidence because there was no evidence that the box cutter was used in the incident that occurred between appellant and D.W. Thus, the district court abused its discretion by admitting the box cutter into evidence. But we conclude that the error was harmless based on the limited use of the box-cutter evidence at trial. *See State v. Sanders,* 775 N.W.2d 883, 887 (Minn.2009) ("An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error.").

## III. The district court did not commit plain error by admitting a witness's prior out-of-court statements.

Appellant argues that the district court erred by allowing a police officer to testify about D.W.'s out-of-court statements. As a result of appellant's failure to object at trial, this court may review the admission of the evidence for plain error affecting substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). This standard requires that the defendant demonstrate: "(1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen,* 648 N.W.2d 681, 686 (Minn.2002). If all three prongs

are met, this court "may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted).

Hearsay is defined as an out-of-court statement that is offered for the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is generally inadmissible, unless it fits under an exception that is specifically provided by the rules of evidence. Minn. R. Evid. 802. The Minnesota Supreme Court has recognized that "[t]he number and variety of exceptions to the hearsay exclusion make objections to such testimony particularly important to the creation of a record of the [district] court's decision-making process in either admitting or excluding a given statement." *State v. Manthey,* 711 N.W.2d 498, 504 (Minn.2006). If a defendant does not object to a hearsay statement at the time of trial, it deprives the state of the opportunity to establish that the statement was admissible under an exception to the hearsay rule. *Id.*

Here, the state gave notice before trial of its intent to offer D.W.'s out-of-court statements to police officers and argued that the statements were admissible under several hearsay exceptions. At trial, the prosecutor elicited testimony from a police officer about several statements that D.W. made to him in an interview several days after the incident. Appellant's counsel did not object to the police officer's testimony. We first note that these statements were not clearly or obviously hearsay because D.W.'s out-of-court statements were reasonably consistent with D.W.'s testimony. Moreover, we conclude that the district court did not commit plain error by admitting D.W.'s statements because appellant's counsel failed to object at trial and, as a result, the prosecutor did not have the opportunity to argue for the admissibility of the statements under several hearsay

exceptions. *See Manthey,* 711 N.W.2d at 504 (concluding that it was not plain error to admit unobjected-to hearsay testimony because the state did not have the opportunity to demonstrate that the statements were admissible under an exception to the hearsay rule).

## IV. The prosecutor did not improperly vouch for a witness during his closing statement.

■■■■■ Appellant argues that he is entitled to a new trial because the prosecutor improperly vouched for D.W.'s testimony during his closing statement. Specifically, he objects to the prosecutor's statements that D.W. was "very sincere" and "very frank in his testimony." Because appellant's counsel did not object to the alleged prosecutorial error at trial, our review is for plain error. *State v. Hill,* 801 N.W.2d 646, 654 (Minn.2011). In applying the plain-error analysis to claims of prosecutorial misconduct, this court uses a modified substantial-rights test that places the burden of persuasion on the state to demonstrate that the alleged misconduct did not affect the defendant's substantial rights. *Id.* This court will "reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Swanson,* 707 N.W.2d 645, 658 (Minn.2006).

■■■■■ A prosecutor may not express a personal opinion regarding witness credibility, but it is not improper for a prosecutor "to analyze the evidence and argue that particular witnesses were or were not credible." *State v. Wright,* 719 N.W.2d 910, 918–19 (Minn.2006). A prosecutor's statements in closing argument become improper vouching when the prosecutor "implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility." *State v. Patterson,* 577 N.W.2d 494, 497 (Minn.1998) (quota-

tion omitted). To determine whether a prosecutor's statement constituted improper vouching, this court considers the closing argument as a whole. *Swanson,* 707 N.W.2d at 656.

Here, the prosecutor's brief statements were arguments regarding D.W.'s credibility that did not constitute improper vouching. Viewed in context, the prosecutor reminded the jury that it heard testimony from D.W. and that while "there [were] times where he paused and thought about" what happened, D.W. "was very sincere" and "very frank." These statements were not a direct endorsement of D.W.'s credibility. *See Swanson,* 707 N.W.2d at 656 (stating that the statement "the state believes [the witness] is very believable" was "impermissible vouching on its face because the state directly endorsed the credibility of [the] witness," but a statement that the witness was "very believable" was proper (quotation omitted)). Thus, the prosecutor did not commit misconduct and, therefore, appellant is not entitled to a new trial.

## DECISION

Appellant's threat to commit a future assault during an ongoing confrontation was prohibited by the terroristic-threats statute, and the evidence was sufficient to sustain his conviction. Additionally, appellant was not denied a fair trial by the district court's admission of evidence that he had a box cutter at the time of his arrest, and the district court did not commit plain error by admitting a witness's prior out-of-court statements. Finally, the prosecutor's challenged statements were arguments regarding a witness's credibility, not improper vouching.

**Affirmed.**