*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1137**

In the Matter of the Welfare of: T. S. G. B., Child

**Filed December 29, 2014
Affirmed
Hudson, Judge
Dissenting, Stoneburner, Judge**[*]

Cottonwood County District Court
File No. 17-JV-14-32

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Nicholas A. Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Larkin, Judge; and Stoneburner, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

Appellant challenges the sufficiency of the evidence supporting two delinquency adjudications of fifth-degree assault. Because the circumstances proven are inconsistent with any rational hypothesis other than guilt, we affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

On April 25, 2014, appellant T.S.G.B. was living with his grandmother and attending school in Windom. Because of incidents that had occurred during the previous week, appellant's grandmother had arranged for him to receive respite care for a weekend at Southwestern Youth Services in Magnolia. Appellant's social worker was to escort him to Magnolia after school and appellant was to return to his grandmother's home that Sunday. Because the social worker believed that appellant would be upset by the news, she asked a Windom police officer to accompany her when she met with him.

Appellant spoke with the social worker in a school administrator's office. The social worker informed appellant of the decision for him to receive respite care in Magnolia. In response, appellant stood up and attempted to leave; the police officer grabbed his arm and ordered him to sit down. Appellant reacted badly to the news; he became belligerent, "balled up" his fists, and told his social worker that he "was not going." The social worker attempted to explain the circumstances that required appellant to spend the weekend in Magnolia. Appellant interrupted her several times, stating "No, I am not going," and "That's b-llsh-t." He also slammed his fist into his hand. Appellant then looked at the social worker and told her "I will get another assault charge on both of you." The social worker indicated that appellant's actions caused her fear; she testified that she had formulated a plan about how she would protect herself if appellant attacked her.

Appellant continued to strike his hand with his fist as he argued with the social worker and police officer. Eventually, the police officer told appellant that, "Today, you

are going to Magnolia." Appellant responded, "Watch me; I'll get another assault charge." The police officer asked appellant how he intended to accomplish that; appellant replied, "You'll see." The officer then asked appellant if he was threatening them; appellant responded "no." Appellant continued to argue with both individuals; shortly thereafter, the officer attempted to take appellant's backpack from him. Appellant then stood up, clenched his teeth, and stood face-to-face to the officer, who believed, based upon her experience and training, that appellant was "ready for a fight." Appellant asked the officer, "What do you think you're going to do, b-tch?" Appellant then fled from the school.

Appellant was charged with two counts of felony-level fifth-degree assault and one count of misdemeanor fleeing a police officer. Following trial, the district court found that the state had proved all allegations beyond a reasonable doubt and adjudicated appellant delinquent on all counts. This appeal follows.

## D E C I S I O N

Appellant argues that the evidence is insufficient to support his delinquency adjudications, asserting that the state failed to prove beyond a reasonable doubt that he intended to cause fear in the social worker or the police officer. In reviewing a claim of insufficient evidence in a delinquency proceeding, we assess whether the record and the legitimate inferences drawn from it reasonably support the factfinder's conclusion that the appellant committed the charged offense. *In re Welfare of J.R.M.*, 653 N.W.2d 207, 210 (Minn. App. 2002). We assume that the fact-finder believed the state's witnesses and disbelieved any evidence to the contrary. *In re Welfare of T.N.Y.*, 632 N.W.2d 765,

3

768 (Minn. App. 2001). The same standard applies in both bench and jury trials. *In re Welfare of M.E.M.*, 674 N.W.2d 208, 215 (Minn. App. 2004).

To prove that appellant committed the offense of fifth-degree assault, intent-fear, the state must establish beyond a reasonable doubt that appellant committed "an act with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.224, subd. 1(1) (2012). Generally, intent is established by circumstantial evidence. *State v. Smith*, 825 N.W.2d 131, 136 (Minn. App. 2012), *review denied* (Minn. Mar. 19, 2013). We apply a two-step analysis in reviewing a conviction based upon circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved, deferring to the jury's acceptance or rejection of evidence in support of those circumstances. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). Second, we examine independently the reasonable inferences that could be drawn from the circumstances. *Id*. To uphold appellant's adjudications, the circumstances proved must be consistent with the reasonable inference that appellant is guilty and inconsistent with any other rational inferences. *Id*.

Here, the district court found that the state proved the following circumstances relevant to both assault charges: (1) that appellant was angry, argumentative, and hostile; (2) that he threatened each individual by telling them that he "was going to get another assault charge 'on both;'" and (3) that he repeatedly and loudly slammed his "clenched fist" into his other hand. The district court found, relevant to the assault charge against the police officer, that appellant "stood face-to-face with [the officer], with clenched teeth and clenched fists, saying 'What do you think you are going to do, b-tch?'" The district

4

court also found, relevant to the assault charge against the social worker, that appellant "said loudly, in a threatening manner, 'I'm not going, period!' and slammed his clenched fist into his other hand" as he stared at the social worker. It is reasonable to infer from these circumstances that appellant intended to cause fear in both individuals.

Appellant maintains the evidence supports a rational hypothesis inconsistent with guilt; he asserts that the proven circumstances demonstrate only that he was "venting his spleen." Appellant alleges that the district court overlooked important evidence in support of this hypothesis. He argues that he remained seated during the entire confrontation, that he framed his statement that he would "get another assault charge" in the future tense, and that he told the officer that he was not threatening either individual. Appellant also maintains that he never "directed any physical action" toward either the social worker or police officer.

But we may consider only the circumstances proved when evaluating the sufficiency of circumstantial evidence. *Hanson*, 800 N.W.2d at 622. Here, the district court found that appellant "stood up, clenched his teeth . . . and stood face to face with [the officer];" the district court also found that the manner in which appellant struck his hand with his fist "was clearly directed at [the social worker]." These findings contradict two of the assertions that appellant offers in support in his proffered inference: (1) that appellant remained seated during the entire encounter; and (2) that he did not direct physical action toward either individual. The district court's findings are well-supported by the testimony and are not clearly erroneous. We therefore decline to consider these assertions in evaluating the sufficiency of the circumstantial evidence.

5

Considering the circumstances proved, appellant's initial reaction is consistent with his assertion that he was angry and frustrated by the news that he would receive respite care in Magnolia. But appellant's subsequent conduct, which escalates beyond general belligerence, is inconsistent with that of someone whose intention is merely to "vent his spleen." Appellant told the social worker and police officer that he would get "another assault charge 'on both of them.'" He yelled at the police officer through clenched teeth and repeatedly slammed his fist into his hand. His conduct caused the police officer to believe that appellant was angry, aggressive, and "ready for a fight." The circumstances are reasonably consistent only with an intent to cause fear of bodily harm and thus inconsistent with any rational hypothesis except guilt. We therefore conclude that the evidence is sufficient to support appellant's adjudications of assault in the fifth degree.

**Affirmed.**

**STONEBURNER**, Judge (dissenting)

I respectfully dissent because I agree with appellant that the evidence is insufficient to support a finding that, beyond a reasonable doubt, he committed an act with intent to cause fear of immediate bodily harm or death.

T.S.G.B. was put in a situation that, as all involved adults recognized, was guaranteed to trigger an angry response. The adults involved were prepared for such a response, and T.S.G.B. did not disappoint them. But, to his credit, T.S.G.B. limited his response to verbalizing just how angry he was and demonstrating that anger by clenching his fists and then pounding his fist into his own hand several times. T.S.G.B. *predicted* that he *would* "get another assault charge on both of you" *if* he was forced to immediately go to a juvenile facility. When he was asked if he was making a threat against either of the adults confronting him, T.S.G.B. said "No . . . it might sound like [a threat] but it's not." When the police officer involved grabbed his bag, T.S.G.B. stood face to face with her with his teeth and fists clenched, but he did not assault anyone: he ran out of the room and was later found standing in the street smoking a cigarette. He was taken into custody without incident.

For this display of understandable and predictable anger, T.S.G.B, an already troubled teenager, was charged with two counts of assault, specifically "commit[ting] an act with intent to cause fear in another of immediate bodily harm or death," in violation of Minn. Stat. § 609.224, subd. 1(1) (2012). Because of his prior offending history, these are felony charges. *See* Minn. Stat. § 609.224, subd. 4(a). The state had to prove that T.S.G.B. committed an act "with intent to cause fear in another of *immediate* bodily harm

or death." Minn. Stat. § 609.02, subd. 10(1) (2012) (emphasis added). But the evidence in this case is that T.S.G.B. threatened only to commit a future assault and committed no act, physical or verbal, that threatened *immediate* bodily harm.

"Whether a defendant's conduct is prohibited by the statute he is charged under is an issue of statutory interpretation that this court reviews de novo." *State v. Smith*, 825 N.W.2d 131, 136 (citing *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002)). I would hold that T.S.G.B.'s bad behavior, as a matter of law, is not the conduct prohibited by Minn. Stat. § 609.224, subd. 1(1), because all of his verbal threats related to future acts, and he never attempted to strike or push or otherwise make physical contact with either of the adults involved.

Furthermore, even under the analysis of the majority opinion, I would conclude that given all of the circumstances proved, the state failed to prove intent to commit immediate bodily harm beyond a reasonable doubt. I concede that the inference of intent drawn by the district court is not unreasonable, but equally reasonable is T.S.G.B.'s argument that he was "venting his spleen" rather than communicating an immediate threat of bodily harm. The circumstances found are plainly set out in the district court's order. The district court found that: (a) T.S.G.B. "was angry, argumentative, loud, and hostile during the entire encounter"; (b) T.S.G.B. made threats "saying he was *going to get another assault charge* 'on both of them'" (emphasis added); (c) T.S.G.B. "repeatedly and loudly slammed his clenched fist *into his other hand* during the encounter" (emphasis added); and (d) T.S.G.B. "stood up face-to-face [with the police officer] with clenched teeth and clenched fists saying, 'What do you think you are going to do, b-tch?'" I

D-2

submit that these circumstances do not constitute conduct that supports only a conclusion of intent to commit immediate bodily harm and do reasonably lead to a conclusion that this troubled, frustrated, angry teenager was doing his best in bad circumstances to restrain himself from assault, while plainly communicating his fear (and threat) that he would not be able to restrain himself if they forced him to go to the juvenile facility. T.S.G.B. may be guilty of threats, but I would conclude that he is not guilty of the assault charges that were brought.

I also lament the lack of effective tools and resources in our juvenile justice system that lead to situations and outcomes like this one, resulting in yet another troubled youth being burdened with a felony adjudication, which appears to me to be a consequence that is out of proportion to the actual events.