*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1417**

State of Minnesota,
Respondent,

vs.

Hamzeh Daghighian,
Appellant.

**Filed August 17, 2015
Affirmed
Hooten, Judge**

Dakota County District Court
File No. 19HA-CR-12-4053

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Stacy St. George, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and

Toussaint, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction of second-degree assault and terroristic threats, appellant argues that the evidence was insufficient to prove that he had the requisite intent to be convicted of either offense and that he was denied a fair trial because the district court improperly instructed the jury on self-defense. We affirm.

## FACTS

Appellant Hamzeh Daghighian was charged with one count of second-degree assault and one count of terroristic threats arising out of an incident on November 24, 2012. A jury trial was held in April 2014. The following facts were established at trial.

Sometime around 2010, N.M., a woman in her mid-20s, met appellant, a man in his late-40s, while playing poker at bars. She considered appellant a "poker friend," but not a close friend. On the evening of November 24, 2012, N.M. and the victim, a male friend in his late-30s whom N.M. had known since 2008 or 2009, went to a bar and restaurant in Burnsville. After they had been standing at the bar for about 20 minutes, appellant walked up to N.M. and grabbed her by the buttocks "aggressively" and "firmly." The victim, who had seen appellant before, but did not know him, asked appellant not to touch N.M. Then N.M. said to appellant, "[Y]ou're lucky my hands are full with these drinks or I would have slapped you." N.M. testified that appellant "had never touched [her] inappropriately" prior to that night. Five minutes later, appellant grabbed N.M.'s buttocks again, and she "slapped him on the back." The victim "stepped in between" N.M. and appellant and told appellant "not to put his hands on [N.M.]

again." The victim spoke firmly but did not yell, did not use a threatening tone of voice, did not get "in [appellant's] face," and did not touch appellant when he spoke to him. The victim did not have any weapons or anything that could be construed as a weapon on his person.

Appellant then said to the victim in an "aggressive" tone, "[L]et's step outside." The victim replied, "[A]ll right. Let's go." The victim thought that appellant was "looking for a fight," but the victim's "goal was to step [outside] and get him away from [N.M.] and calm him down and get him to leave." When N.M. heard appellant say "let's go outside" to the victim, N.M. assumed that this was an invitation by appellant to fight with the victim.

Appellant and the victim started walking toward the bar's exit. Appellant "was walking at a very brisk pace," with the victim following behind more slowly. It seemed to the victim like appellant "was in a hurry to get something." By the time the victim exited the door, appellant was already at appellant's vehicle, which was located about 15 to 20 yards away. The victim saw appellant "reaching for something inside the driver's seat of his vehicle."

Appellant retrieved a handgun from inside his vehicle, walked up to the victim, and "stuck the gun" into the victim's chest. The victim did not know whether the gun was loaded, and appellant intentionally held the gun in such a way that the victim could not see that it was unloaded. Appellant asked the victim why he was "threatening" him. The victim replied that he was not threatening him; he just wanted appellant to "keep his hands off of [his] friend." Appellant asked the victim why he had touched him, and the

3

victim told appellant that he had not touched him. After a minute or so, appellant moved the gun up to the victim's face, "brush[ing] it up against [his] chin when [appellant] moved it." The victim tried to calm appellant down by saying, "[W]hat are you doing[?] You can't pull a gun on me like this." Appellant replied that he could do "whatever he wants" and that he had a "conceal and carry license." Appellant started walking away. The victim pulled out his phone and started calling 911, but appellant told him not to call the police. The victim told appellant that he would not call the police if appellant left. Appellant then left. The victim never touched appellant either inside or outside of the bar, and he did not threaten or yell at appellant.

An uninvolved witness observed the incident. The witness had eaten dinner with his family at the bar that night. As the witness was exiting the bar, he saw appellant walk to his vehicle and retrieve a handgun "out of a cubby hole out of the . . . driver's side door." The victim was not pursuing appellant and did not appear to have anything in his hands. Appellant quickly walked back to the victim with the gun in his hand and put the gun "up to [the victim's] face." The victim did not appear to be yelling and did not "appear to be aggressive or threatening." The victim was "[j]ust standing there." Eventually, appellant walked back to his car "in a hurry" and drove off. The witness called 911 to report the incident.

The victim went back inside the bar and told N.M. what had happened outside. He explained that, during the incident, the whole situation seemed surreal. When he started talking with N.M., the gravity of the situation set in and he "started getting scared that" he "could have been dead if [he had] said the wrong thing."

4

At trial, appellant testified that he had pre-existing injuries that prevented him from committing the assault in the manner described by the victim and the disinterested witness and that he merely took action to defend himself from an impending assault by the victim. The jury found appellant guilty of both charged offenses. The district court entered convictions on both charges but sentenced appellant to 36 months in prison only on the second-degree assault conviction. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that there is insufficient evidence to convict him of either second-degree assault or terroristic threats because the state did not prove beyond a reasonable doubt that he had the requisite state of mind to commit either offense.

When reviewing the sufficiency of the evidence, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the [appellant] was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

A state of mind, such as intent, "generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000). "A conviction based on circumstantial evidence . . . warrants heightened scrutiny" compared to a conviction based on direct evidence. *State*

*v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). This heightened scrutiny comes in the form of a two-step analysis when reviewing sufficiency-of-the-evidence challenges based on circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved," considering "only those circumstances that are consistent with the verdict." *Id.* at 593–99. "As with direct evidence, we construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the [s]tate's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). We give no deference to the jury's choice between reasonable inferences. *Al-Naseer*, 788 N.W.2d at 474.

### A. Second-degree assault conviction

The second-degree assault statute provides that "[w]hoever assaults another with a dangerous weapon" is guilty of a felony. Minn. Stat. § 609.222, subd. 1 (2012). "Assault" is defined, in relevant part, as "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (2012). "Dangerous weapon" includes "any firearm, whether loaded or unloaded." *Id.*, subd. 6 (2012). "'With intent to' or 'with intent that' means that the actor either has a purpose to

6

do the thing or cause the result specified or believes that the act, if successful, will cause that result." *Id.*, subd. 9(4) (2012).

The circumstances proved in this case are as follows. After the victim told appellant not to touch N.M., appellant "aggressive[ly]" asked the victim to "step outside," which statement indicated to the victim and N.M. that appellant wanted to fight the victim. The victim was 15 or 20 yards away from appellant when appellant rushed to his car and got his handgun. Appellant then quickly walked up to the victim and pressed his gun against the victim's chest and then face, "brush[ing] it up against" the victim's chin. The victim "tried to calm him down." Appellant held the gun in such a way that the victim would not know whether it was loaded. When the incident was over, the victim realized that he "could have been dead if [he had] said the wrong thing."

We conclude that the circumstances proved are consistent with a rational hypothesis of guilt. Pointing a gun at another has been held by this court and by the Minnesota Supreme Court as sufficient to satisfy the intent element of second-degree assault. *See State v. Cole*, 542 N.W.2d 43, 51 (Minn. 1996) (holding that appellant's "intent to cause fear in [the victim] was carried out by his intentional pointing of a gun at her"); *see also In re Welfare of T.N.Y.*, 632 N.W.2d 765, 770 (Minn. App. 2001) ("Pointing a weapon at a police officer or another person has been held to supply the requisite intent to cause fear.").

Appellant argues that "the circumstances proved also support the reasonable inference that [appellant] merely intended to [defuse] the situation." This argument is unpersuasive. Rather than defusing the situation, appellant escalated the situation by: (1)

7

aggressively suggesting that he and the victim go outside; (2) rushing to his car to get his gun even though the victim was 15 to 20 yards away and was not acting in a threatening manner; (3) pointing the gun at the victim's chest and intentionally holding it so that the victim could not tell whether it was loaded or unloaded; (4) speaking in an angry or excited manner to the victim; (5) moving the gun up to the victim's face, brushing the gun against the victim's chin; and (6) telling the victim not to call 911.

Appellant also argues that he lacked the requisite intent because, even though he pointed a gun at the victim, he did not *verbally* "express an intention of causing [the victim] immediate bodily harm." We disagree. Intent can be proved "by inference from words and acts of the actor both before and after the incident." *Johnson*, 616 N.W.2d at 726. While the words that appellant used during the incident may not have specifically indicated that appellant intended to cause the victim immediate bodily harm, his conduct did express such an intent. The circumstances proved are consistent only with guilt, and therefore there is sufficient evidence to support appellant's second-degree assault conviction.

### B. Terroristic threats conviction

The terroristic threats statute provides that "[w]hoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror" is guilty of a felony. Minn. Stat. § 609.713, subd. 1 (2012). A "crime of violence" includes second-degree assault. Minn. Stat. § 609.1095, subd. 1(d) (2012). In the context of this statute, "purpose" means "aim, objective, or intention." *State v. Smith*, 825 N.W.2d 131, 136 (Minn. App. 2012)

8

(quotation omitted), *review denied* (Minn. Mar. 19, 2013). To "terrorize" means "to cause extreme fear by use of violence or threats." *Id.* (quotation omitted).

The circumstances proved are as stated above. We conclude that the circumstances proved are consistent with guilt because they indicate that appellant had the purpose of causing extreme fear in the victim by shoving a gun into the victim's chest and face in the midst of this confrontation. At the very least, appellant recklessly disregarded the risk of causing such extreme fear. The victim's extreme fear further supports a finding that the state proved the intent element of this offense. *See Sykes v. State*, 578 N.W.2d 807, 811 (Minn. App. 1998) ("The effect of a terroristic threat is not an essential element of the offense, but the victim's reaction to the threat is circumstantial evidence relevant to the element of intent."), *review denied* (Minn. July 16, 1998).

Appellant's argument on appeal is limited to his contention that the circumstances proved support two rational inferences consistent with innocence: that he "was simply intending to [defuse] the altercation," and that he "acted out of fear of personal harm." Appellant again points out that he "merely" pointed the gun at the victim and did not make any verbal threats. And, he argues that there was no evidence of "long-term planning of threatening conduct" or that the threats had a "continual nature."

As discussed above, appellant's first inference is irrational because the circumstances proved indicate that he escalated the situation, rather than defusing it. We conclude that appellant's second inference—that he acted out of fear of harm—is also irrational. His second inference depends entirely on his own testimony that: (1) his previous injury rendered him physically compromised; (2) people in the bar were pushing

chairs and discussing the fight that was about to happen between him and the victim; (3) the victim was only a few feet away from appellant when appellant got the gun; and (4) appellant believed that he was in imminent danger of bodily harm at the hands of the victim and that he could not have escaped safely. The jury clearly rejected appellant's version of the incident by finding him guilty. Moreover, the statute does not require "long-term planning of threatening conduct" or "continual" threats, as appellant suggests. *See* Minn. Stat. § 609.713, subd. 1. Because the circumstances proved are consistent only with guilt, there is sufficient evidence to support appellant's terroristic threats conviction.

## II.

Appellant next argues that the district court committed reversible error by improperly instructing the jury on self-defense. Prior to trial, appellant filed a motion in which he proposed his preferred jury instructions, including the self-defense jury instruction that is at issue here. The district court did not rule on this motion. At trial, the district court gave a self-defense jury instruction that was not appellant's preferred instruction, but defense counsel did not object. After appellant was convicted, he filed a motion for a new trial, claiming that the district court's self-defense instruction contained a fundamental error of law because it misstated the law. "Objections to [jury] instructions claiming error in fundamental law or controlling principle may be included in a motion for a new trial even if not raised before deliberations." Minn. R. Crim. P. 26.03, subd. 19(4)(f). The district court denied appellant's motion.

A district court has "broad discretion" when selecting the language for jury instructions. *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). "But a district court

10

abuses that discretion if its jury instructions confuse, mislead, or materially misstate the law.  We review the jury instructions as a whole to determine whether the instructions accurately state the law in a manner that can be understood by the jury."  *Id.* (citation omitted).  We review the interpretation of a statute de novo.  *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012).

Minnesota's self-defense statute provides that "reasonable force may be used upon or toward the person of another without the other's consent . . . when used by any person in resisting . . . an offense against the person."  Minn. Stat. § 609.06, subd. 1(3) (2012).

The district court instructed the jury as follows:

> The [appellant] is not guilty of a crime if the [appellant] used reasonable force against [the victim] to resist an offense against the person, and such an offense was being committed or the [appellant] reasonably believed that it was.

> It is lawful for a person, *who is being assaulted and* who has reasonable grounds to believe that bodily injury is about to be inflicted upon the person, to defend from an attack.  In doing so, the person may use all force and means that the person reasonably believes to be necessary and that would appear to a reasonable person, in similar circumstances, to be necessary to prevent an injury that appears to be imminent.  An assault is an act done with intent to cause fear of immediate bodily harm or death in another.

> The kind and degree of force a person may lawfully use in self-defense is limited by what a reasonable person in the same situation would believe to be necessary.  Any use of force beyond that is regarded by the law as excessive.

> The [s]tate has the burden of proving beyond a reasonable doubt that the [appellant] did not act in self-defense.

(Emphasis added.) Appellant argues that the district court's inclusion of the emphasized language was misleading because it suggested that appellant had to be resisting "an assault," rather than "an offense against the person," as the self-defense statute provides. Appellant contends that the district court's instruction "conflicted with the plain language of the statute by telling the jury that it was lawful for [appellant] to act in self-defense only if he was being assaulted, which suggested that he must be under assault before he can assert that right."

We agree with appellant that the statute's language, "an offense against the person," is somewhat broader than the instruction's language, "an assault." *See State v. Soukup*, 656 N.W.2d 424, 429 (Minn. App. 2003) (holding that "self-defense is applicable to a charge of disorderly conduct where the behavior forming the basis of the offense presents the threat of bodily harm"), *review denied* (Minn. Apr. 29, 2003). However, we conclude that the district court's instruction did not "confuse" or "mislead" the jury or "materially misstate the law." *Kelley*, 855 N.W.2d at 274. While appellant is correct that "a person is also allowed to lawfully use reasonable force in self-defense to defend against crimes other than assault," he fails to identify any crime besides assault that the jury could have reasonably considered that he was defending against. The only evidence supporting his self-defense claim was his own testimony that he believed the victim was about to assault him.

Moreover, when looking at the district court's instruction "as a whole," *id.*, we believe that the instruction fairly and adequately stated the law. In the first paragraph, the district court instructed the jury that appellant was not guilty of a crime if he used

reasonable force against the victim to resist "an offense against the person" that the victim was committing against appellant, or if appellant reasonably believed that the victim was committing such an offense. This language mirrors the statute. In the second paragraph, the district court instructed the jury that: (1) appellant could lawfully defend from an attack if he was "being assaulted" by the victim and had "reasonable grounds to believe that bodily injury [was] about to be inflicted upon" him; (2) in that event, appellant had the right to use reasonable force "to prevent an injury that appear[ed] imminent"; and (3) "[a]n assault is an act done with intent to cause fear of immediate bodily harm or death in another." The instruction clearly communicated to the jury that, if it believed appellant's version of the incident—that appellant reasonably believed that the victim was about to inflict bodily injury upon him—then it must conclude that appellant acted in self-defense and it must acquit him. We conclude that the district court did not abuse its discretion by giving the self-defense jury instruction that it gave.

Even if the district court's instruction was erroneous, a new trial would be warranted only if the error "might have prompted the jury, which is presumed to be reasonable, to reach a harsher verdict than it might have otherwise reached." *State v. Lee*, 683 N.W.2d 309, 316 (Minn. 2004) (quotation omitted). Under the harmless error test, if "beyond a reasonable doubt the [error] did not have a significant impact on the verdict, reversal is not warranted." *Id.* (quotation omitted).

A new trial would not be warranted here because there is no reasonable chance that the jury would have acquitted appellant if the district court had given appellant's preferred instruction. The victim and a disinterested witness consistently testified that

appellant, not the victim, was the aggressor; that the victim was not pursuing appellant when appellant got the gun; and that the victim was not acting aggressively or in a threatening manner during or prior to the confrontation. The only evidence tending to indicate that appellant acted in self-defense was appellant's own testimony, which the jury rejected. There was no reversible error.

**Affirmed.**