**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1799**

Michelle Lynn Wilson,
Respondent,

vs.

Ryan Converse Wilson,
Appellant.

**Filed August 12, 2024
Affirmed
Schmidt, Judge**

Wright County District Court
File No. 86-CV-23-2436

Debra Julius, Julius Law Office, Ltd., Prior Lake, Minnesota (for respondent)

Laura Schultz, Laura L. Schultz Law Office, Edina, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Schmidt, Judge; and Kirk, Judge.[*]

**SYLLABUS**

A stipulation between parties in a dissolution judgement and decree to waive "all liability, claims, and obligations of any kind against the other party, whether arising in contract, status, tort or otherwise" does not operate as a waiver of a party's right to seek a harassment restraining order based, in part, on conduct that occurred during the marriage.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**SCHMIDT**, Judge

In this appeal from the district court's grant of a harassment restraining order (HRO), appellant Ryan Converse Wilson (husband) argues that the district court (1) should have assigned the case to the judge who had presided over the parties' dissolution proceedings; (2) clearly erred in making credibility determinations; (3) erred by considering certain allegations that husband maintains were waived in the prior dissolution proceedings; and (4) abused its discretion in granting the HRO because the record does not support the existence of harassment. We affirm.

**FACTS**

The parties dissolved their marriage, by stipulated findings of fact, conclusions of law, order for judgment, and judgment and decree in October 2017. Relevant to the arguments presented by husband in this matter, the parties "expressly waived any and all liability, claims, and obligations of any kind against the other party, whether arising in contract, status, tort or otherwise," and they agreed to be "barred from bringing any actions relating to such liability, claims, or obligations."

In May 2023, respondent Michelle Lynn Wilson (wife) filed a petition for a HRO. Wife alleged that husband made uninvited visits to her home, had frightened her with threatening behavior at appointments for their children, and harassed her over social media. Wife described being afraid when husband yelled at her and noted that husband previously would yell before physically abusing her. Wife believed the harassment would continue because their relationship consisted of a history of abuse.

2

The district court declined to issue an ex parte HRO and, instead, scheduled a hearing on wife's petition. Husband wrote a letter to request that the court refer the HRO matter to the family court judge who handled the parties' divorce. The district court rejected the request and retained the HRO matter.

At the hearing in August 2023, wife testified that during their marriage husband hit her, pushed her to the floor, threatened to kill her in front of their children, bit her nose, and kicked her while she was pregnant. Wife stated the abuse made her afraid of husband.

Wife testified about multiple occasions since the divorce when husband yelled at her. Wife described a May 2023 incident when husband yelled at her at a counseling appointment for their child. Wife testified that this event was similar to past incidents from their marriage when husband would yell at her and "then it ended up being violent." Wife testified that she felt scared and unsafe at the appointment.

Wife testified about a February 2023 event when she notified a counselor that their children had seen feces in the bathroom of husband's home. After husband learned about the disclosure, husband "got mad and said that [wife] was making that up." Wife testified that husband's reaction was like instances during their marriage when husband would become angry and then physically abuse her. Wife felt scared by husband's reaction.

Wife provided another example of husband yelling during a virtual medical appointment. Even though she was not in husband's physical presence, wife testified that she felt anxious, her heart started racing, and she began crying.

3

Wife further testified about another doctor visit when husband yelled at her regarding their child's diagnosis. The doctor asked husband to step out of the room due to his yelling. Wife testified that this incident made her feel scared.

Wife also detailed other instances of husband yelling at her in public. In addition, she detailed other instances of husband's harassment, such as unwanted text messages, uninvited visits to her home, and harassing messages over social media.

Husband testified at the hearing, claiming wife accused him of child abuse at an appointment and screamed at him. Husband asserted that wife's "character assassination" testimony stemmed from her not liking the results from the divorce proceedings.

On cross-examination, husband admitted that he responded to wife in a "loud voice" during one medical appointment, but he "did not consider it yelling." Husband denied yelling at other appointments. Husband denied biting wife's nose and hitting her during their marriage, but he could not recall if he said he would kill wife. Husband admitted that at times during the marriage he yelled and acted inappropriately, but he believed it was unreasonable, in his opinion, for wife to be afraid of him.

Following the hearing, the district court granted the HRO. The district court found wife to be credible and afforded her testimony "great weight." In contrast, the district court found husband's testimony, "particularly regarding past domestic abuse allegations, was not credible." The court found husband's answers to be "evasive and/or non-responsive." The district court also found that there were "reasonable grounds to believe that [husband] has engaged in harassment which has or is intended to have a substantial adverse effect on safety, security, or privacy of [wife]." The court also found that husband threatened to kill

4

wife and "yelled at [her] during therapy and/or doctor appointments in front of one of the parties' children and others." The court concluded that husband's "recent conduct in light of the past abuse demonstrates how [husband's] more recent behavior was intended to frighten and intimidate [wife]."

After the district court issued the HRO, husband moved for amended findings and to vacate the order. Husband asserted that only the judge that oversaw the dissolution proceedings had jurisdiction over the parties, which precluded a different judge from ruling on the HRO petition. Husband also argued that the district court's findings of fact did not meet the statutory standard for issuing a HRO. Husband further claimed that wife violated the stipulated decree from their divorce by presenting allegations "arising prior to the 2017 decree in her petition and testimony."

The district court held a second hearing in October 2023 to address husband's motion. The court noted that the HRO proceeding was "an independent proceeding from the family court file" that raised "separate issues" and, as such, the court determined it could issue the HRO "even though there is a family court file." Following the hearing, the district court issued an amended HRO that provided clarity regarding certain restrictions related to the children's medical care and attendance at appointments but did not otherwise substantively alter the original order.

Husband appeals.

**ISSUES**

I.      Did the court abuse its discretion by not reassigning the case to the judge who presided over the parties' dissolution proceedings?

II.     Did the district court clearly err in its credibility determinations?

III.    Did the district court err by considering allegations regarding husband's conduct prior to the parties' divorce?

IV.    Did the district court abuse its discretion in granting the HRO?

**ANALYSIS**

**I.      The district court acted within its discretion in rejecting husband's request to reassign the HRO petition.**

Husband argues that the district court "erred by not assigning the matter to the family court judge." To support this argument, husband relies on a general practice rule that states "the chief judge of the district or the chief judge's designee may order that all pretrial and trial proceedings shall be heard before a single judge" in circumstances that "the court or parties believe is likely to be complex, or where other reasons of efficiency or the interests of justice dictate." Minn. R. Gen. Prac. 113.01(a).

Husband requested to have the HRO petition matter reassigned by filing a letter directed to the judge assigned to handle the petition. But filing a letter directed to the judge assigned to handle a case is not the appropriate process to request to have a case reassigned. Instead, a party that desires to have a case reassigned must either make the "suggestion" when filing a civil cover sheet under Minnesota Rule of General Practice 104, or file a motion directed to the chief judge of the district. Minn. R. Gen. Prac. 113.01(a), .02. If the party elects to file a motion to request that a case be reassigned, the motion must

6

"comply with these rules and shall be supported by affidavit(s)." Minn. R. Gen. P. 113.01(a). Compliance with "these rules" includes Minnesota Rule of General Practice 115.04 regarding nondispositive motions. That rule details the timing for a nondispositive motion, requirements to include a notice of motion and motion, affidavits, and a memorandum, and provides an opportunity for the opposing party to respond. *See* Minn. R. Gen. Prac. 115.04 (a), (b).

Here, husband's letter was not a civil cover sheet that he filed pursuant to rule 104. *See* Minn. R. Gen. Prac. 113.01(a). The letter also did not constitute a motion that complied with the rules. *See id.* Nor was the letter supported by any affidavit. *See id.* Most significantly, husband did not direct his request to the chief judge of the district, who has the sole authority to either (1) rule on the request, or (2) assign a designee to rule on the request. *See id.*[1] These procedural defects demonstrate that the district court acted well within its discretion in rejecting husband's request to reassign the HRO petition to the judge who oversaw the divorce proceedings.

Even if husband's request was not procedurally infirm, rule 113.01 uses the word "may" when detailing the power and process for the chief judge to consolidate proceedings before a single judge. *Id.* The word "may" confers discretion to the district court regarding decisions made under the rule. *See State v. Olson*, 884 N.W.2d 395, 397 (Minn. 2016) (noting "may" confers discretion within a criminal rule). Thus, rule 113.01 simply grants the chief judge discretion to order all proceedings be heard by a single judge.

---

[1] Husband cites no case or rule—and we could not find any—that empowers any judge—other than the chief judge or the chief judge's designee—to reassign a case.

7

Husband has identified no legal authority that requires reversal when a chief judge declines to grant the relief available under this discretionary rule. Simply put, there is no requirement that the HRO petition be decided by the judge who presided over the parties' divorce proceedings. As such, the district court did not abuse its discretion in declining to grant the relief sought in husband's procedurally defective letter.

## II. The district court did not clearly err in its credibility determinations.

"A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses." *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). "Credibility determinations are the province of the trier of fact." *Id.* at 763; *see also In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-23 (Minn. 2021) (discussing clear-error standard appellate courts use to review findings of fact).

Husband argues the district court erred in finding wife credible about past abuse because her testimony "was a vague statement that it occurred, with no context as to time, specifics, description of said acts, or any details whatsoever." Husband also argues that the court erred in finding his testimony not credible because "his answers were not evasive or nonresponsive." However, our deferential standard of review requires us to defer to the fact-finder's credibility determinations. *Peterson*, 755 N.W.2d at 763. Having seen the live testimony, the district court is in the best position to assess the credibility of the witnesses. As such, we will not disturb the district court's findings related to the credibility of husband or wife's testimony.

8

**III.    The district court did not err by considering allegations of husband's conduct during the parties' marriage.**

In the order granting the HRO, the district court relied, in part, upon evidence of husband's conduct that occurred during the parties' marriage.  Husband argues that the court erred in considering any conduct that occurred prior to the divorce because the parties expressly waived, and agreed to be barred from bringing any future action related to, "all liability, claims, and obligations of any kind against the other party."

Courts accord stipulated marriage-dissolution judgments the same sanctity as a binding contract.  *Pooley v. Pooley*, 979 N.W.2d 867, 873 (Minn. 2022).  When contract language is unambiguous, we must apply its plain meaning.  *See Nelson v. Nelson*, 806 N.W.2d 870, 872 (Minn. App. 2011).

As relevant to this appeal, the parties' divorce decree stipulated:

> Barred Future Actions.  The parties, having mutually and expressly waived any and all liability, claims, and obligations of any kind against the other party, whether arising in contract, status, tort or otherwise, are barred from bringing any actions relating to such liability, claims, or obligations.

Husband has cited to no authority that this language would bar a court from considering conduct that occurred during a marriage that, when combined with postdissolution harassing and abusive conduct, warrants the issuance of a HRO.  Abusive and harassing conduct does not constitute a "liability," a "claim[]," or an "obligation[]."

Even if those terms could include harassing and abusive conduct, we conclude that the stipulation does not operate as a waiver of a party's right to seek a HRO based, in part, on conduct that occurred during the marriage.  At a minimum, the district court may use

9

evidence of the predissolution conduct for purposes of providing a historical perspective regarding the parties' relationship when considering whether to grant a HRO based upon alleged postdissolution conduct.

The relationship history may provide context for a district court when deciding whether the harasser's conduct was "objectively unreasonable" and whether the allegations from the person allegedly being harassed constitute an "objectively reasonable belief." *See Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006) (detailing statutorily required considerations that district courts must use when deciding whether to grant a HRO petition). The previous relationship conduct also provides insight to a person's reaction to the new alleged conduct, which is relevant to the district court's consideration of the alleged harasser's intent at the time they engaged in the alleged unreasonable conduct. *Id.* (holding harassment statute requires "objectively unreasonable conduct *or intent* on the part of the harasser" (emphasis added)); *see also State v. Smith*, 825 N.W.2d 131, 136-37 (Minn. App. 2012) (noting victim's reaction is circumstantial evidence showing intent), *rev. denied* (Minn. Mar. 19, 2013). The history of the parties' relationship may also assist the district court in making credibility findings related to the parties' testimony, including why the person being harassed may have given contradictory accounts related to prior physical or emotional abuse, or whether the allegedly abused individual has a history of reports that had been thoroughly investigated and proven to be false. *See, e.g.*, *State v. Grecinger*, 569 N.W.2d 189, 196 (Minn. 1997) (holding that expert testimony regarding battered-woman syndrome is admissible when it helps the fact-finder "understand behavior that might otherwise undermine the complainant's credibility").

10

Notably, the district court's order repeatedly used the past domestic abuse to inform its decision as to the current allegations of harassment and abuse. For example, the district court found that wife "credibly testified that [husband's] behavior during appointments was intimidating, especially given the context of past domestic abuse." The court later determined that "[wife's] description of [husband's] recent conduct in light of the past abuse demonstrates how [husband's] more recent behavior was intended to frighten and intimidate her." Thus, even if the parties' stipulated divorce decree could waive the use of such conduct, the district court appropriately used the predissolution conduct as context to inform its decision regarding the allegations of postdissolution harassment.

## IV. The district court did not abuse its discretion in granting the HRO.

Husband further argues that the district court abused its discretion in granting the HRO. We review the issuance of a HRO for an abuse of discretion. *Peterson*, 755 N.W.2d at 761. "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022) (quotation omitted). The district court's findings of fact will not be set aside unless clearly erroneous, and we defer to the district court's opportunity to assess the credibility of witnesses. *Peterson*, 755 N.W.2d at 761.

A district court may grant a HRO if it finds "there are reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2022). "Harassment" is defined, in relevant part, as:

11

> [R]epeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target.

*Id.* at subd. 1(a)(1) (2022). This definition requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person being harassed. *Dunham*, 708 N.W.2d at 567.

A single incident of words is insufficient to be harassment. *Kush v. Mathison*, 683 N.W.2d 841, 844 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). "[H]arassment laws place carefully limited restraints on individuals whose conduct goes beyond an acceptable expression of outrage and civilized conduct, and instead causes a substantial adverse effect on another's safety, security or privacy." *Id.* at 846.

Husband contends that the incidents of yelling at wife during their children's appointments were "not intrusive or unwanted acts that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Husband also asserts that yelling during medical and therapy appointments was not "objectively unreasonable conduct." We disagree.

The district court found that husband "[y]elled at [wife] during therapy and/or doctor appointments in front of one of the parties' children and others." The court afforded wife's testimony "great weight" and found that wife "credibly testified that [husband's] behavior during appointments was intimidating, especially given the context of past domestic abuse." Husband offers general arguments, but points to no evidence suggesting that these findings are clearly erroneous. As such, this court accepts those findings.

12

*Peterson*, 755 N.W.2d at 761. In addition, we have already rejected husband's arguments regarding the district court's credibility determinations and, thus, we accept the court's findings that wife was credible, and husband was not.

Husband argues that wife could not objectively and reasonably believe that husband's conduct of yelling during the appointments constituted harassment. But the record does not reflect husband's conduct was merely inappropriate statements. Instead, the record demonstrated that husband's conduct was unwanted and aggressive behavior, to the point that healthcare providers asked husband to step out of the room on one occasion.

Additionally, based upon wife's credible testimony, the district court found that husband's conduct was "intended to frighten and intimidate" her. *See Dunham*, 708 N.W.2d at 567 (requiring intent *or* objectively unreasonable conduct). The district court also found that husband's actions had, or were intended to have, a substantial adverse effect on wife's safety and security. The court also found that wife's description of husband's recent conduct, "in light of the past abuse[,] demonstrates how [husband's] more recent behavior was intended to frighten and intimidate [wife]." Again, we defer to the district court's credibility findings, and nothing in the record suggests these findings of fact are clearly erroneous. *Peterson*, 755 N.W.2d at 761.

Husband's arguments that the district court abused its discretion in granting the HRO are largely premised upon the flawed foundation that the court could not consider husband's conduct during the marriage. But as we have already held, the district court could—and properly did—consider wife's credible testimony regarding husband's conduct during their marriage as context relevant to husband's postdissolution conduct. The

13

combination of the predissolution conduct combined with the postdissolution conduct constitutes ample evidence for the district court to find that husband harassed wife.

The facts, as found by the district court, support the determination that husband's actions constituted harassment because they were objectively intrusive, unwanted, intended to frighten and intimidate wife, and they had a substantial adverse effect on her. The district court acted well within its discretion in granting the HRO.

## DECISION

The district court acted within its discretion in rejecting husband's request to reassign the HRO matter to the judge that oversaw the divorce proceedings. The district court also did not clearly err in its credibility findings or err in considering conduct from the parties' marriage to inform its decision on whether to grant the equitable relief of a HRO based upon post-divorce conduct. Because the record supports the district court's findings of fact, and because those findings of fact support the district court's grant of the HRO, the district court did not abuse its discretion in granting the HRO.

**Affirmed**.